**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ROCHELLE COHEN,

               Plaintiff,

      v.

BANK OF NEW YORK MELLON
CORPORATION,

               Defendant.

NO. 11-CV-0456 (RA) (GWG)

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* TO**
**EXCLUDE EVIDENCE OF, AND ANY REFERENCE TO,**
**ALLEGATIONS OF "PERVASIVE SEXISM"**

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ................................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ................................................................. 1

ARGUMENT .............................................................................................................. 2

    A.    The Legal Standard ..................................................................................... 3

        1.    The information at issue lacks relevance, and the prejudice from admitting this information into evidence is real and substantial. .............. 3

        2.    Character evidence to prove conformity with prior bad acts is not admissible. ........................................................................................ 5

    B.    Specific Alleged "Bad Acts" ...................................................................... 6

        1.    Defendant's generic Human Resources training from 2005 should not be admitted into evidence. .................................................................. 6

        2.    Evidence of allegations of sexual harassment by another employee against other women should be excluded. ................................ 8

        3.    Allegations of strippers at a work-sponsored event are rife with hearsay, irrelevant and highly prejudicial. ............................................. 12

    CONCLUSION ................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    No. 08-Civ-7508, 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013)............................................3

*Alfano v. Costello, et al.*,
    294 F.3d 365 (2d Cir. 2002)....................................................................................................4

*Evans v. Port Authority of New York and New Jersey,*
    192 F. Supp. 2d 247 (S.D.N.Y. 2002)..................................................................................13

*Fowler v. Transit Supervisors Org.*,
    No. 96 Civ. 6796 (JGK), 2000 U.S. Dist. LEXIS 17452 (S.D.N.Y. Nov. 1, 2000) .........10, 11

*Hawkins v. Costello*,
    460 F.3d 238 (2d Cir. 2006)..................................................................................................13

*International Business Machines Corp. v. BGC Partners, Inc.*,
    No. 10-Civ.-128, 2013 WL 1775437 (S.D.N.Y. Apr. 25, 2013) ............................................4

*Jean-Laurent v. Hennessy,*
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) ..................................................................................13

*Kelber v. Joint Indus. Bd. of the Elec. Indus.*,
    27 F.3d 42 (2d Cir. 1994) ......................................................................................................11

*Lomotey v. Connecticut-Dept. of Transp.*,
    No. 09-0466, 2009 WL 4430893 (2d Cir. Dec. 4, 2009).....................................................4, 5

*Martin v. Reno*,
    No. 96 Civ. 7646 (NRB), 2000 U.S. Dist. LEXIS 18278 (S.D.N.Y. Dec. 18, 2000)........10, 11

*Ogbo v. N.Y.S. Dept. of Fin.*,
    No. 99-cv-9387, 2001 WL 986546 (S.D.N.Y. Aug. 28, 2001)................................................4

*Quinn v. Green Tree Credit Corp.*,
    159 F.3d 759 (2d Cir. 1998)....................................................................................................4

*Rivera v. Baccarat, Inc.*,
    No. 95 Civ. 9478 (MBM) (JCF), 1997 U.S. Dist. LEXIS 19911 (S.D.N.Y. Dec. 12,
    1997) ......................................................................................................................................11

ii

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997)...........................................................................9

*Sprint/United Mgmt. Co. v. Mendelsohn*,
  128 S. Ct. 1140 (2008).................................................................................10

*Woodman v. WWOR-TV, Inc.*,
  411 F.3d 69 (2d Cir. 2005)............................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 404(b) .......................................................................................5

Fed. R. Evid. 401 .........................................................................................3, 10

Fed. R. Evid. 402 ...........................................................................................3, 4

Fed. R. Evid. 403 ......................................................................................4, 9, 10

Fed. R. Evid. 801(c).........................................................................................13

**Introduction**

Because Plaintiff lacks any evidence of actual discrimination, or of any discriminatory animus towards her, Defendant anticipates that Plaintiff will try to prove her case to the jury by stringing together random, cherry-picked and completely irrelevant documents and testimony to create an artificial atmosphere of discrimination based on matters having nothing to do with her claims in this case. The record is devoid of any evidence that Plaintiff was treated differently because she is a woman, or that she ever was sexually harassed or subjected to any sexist comments by her colleagues. This motion is brought to prevent Plaintiff from improperly prejudicing Defendant through the presentation of irrelevant documents and testimony which have nothing to do with her or her claims against the Defendant. Further, some of the "backdrop" that Plaintiff will likely try to present to the jury is not only prejudicial and irrelevant, but also based solely on unfounded rumors, and therefore should be excluded on the additional ground that it is inadmissible hearsay.

**RELEVANT FACTUAL BACKGROUND**

Plaintiff alleges that she was discriminated against through a number of specific acts that were allegedly taken by specific individuals in the BNY Mellon organization, before[1] and after The Bank of New York merged with the Mellon Bank Corporation in 2007. Plaintiff has attributed her claims of disparate treatment to particular individuals – namely, her supervisors, both direct and indirect (Jim Cear, Christine Park, Patrick Crowe, and Doris Meister). In order to prevail on her claim, Plaintiff must show that Cear, Park, Crowe, and Meister treated her unfairly

---

[1] Defendant also seeks to exclude this evidence on the ground that it falls outside the relevant statute of limitations period. This argument is set forth in Defendant's separate Motion *in Limine* to Exclude Evidence that Occurred Outside of the Relevant Statute of Limitations Period.

because of her gender.  Plaintiff has not brought a hostile work environment or sexual

harassment claim against Defendant.  The specific allegations she has made thus far are as

follows:

### *Regarding the Pre-Merger Period*

- Plaintiff suggests she was discriminated against in 2001-2004 because she was hired for a job below her experience level in 2001, and not promoted until 2004.  Jim Cear offered Plaintiff the job in the Mellon Private Wealth Management Division.  First Amended Complaint ("FAC") ¶ 13.

- Plaintiff claims that shortly after she was hired, the Defendant (specifically, Jim Cear) hired Russell Crocker and Ray Beplat to the more senior position of Portfolio Officer III, despite the alleged facts that "plaintiff had the requisite experience for those positions and performed work equivalent to the Portfolio Officer III position in her then-role as Portfolio Administrator."  FAC ¶¶ 17-20.

- Plaintiff alleges that she was paid less than Crocker and Beplat, as well as other unnamed portfolio officers, despite allegedly doing the same work and having the same qualifications.  FAC ¶¶ 18-20.

### *Regarding the Post-Merger Period*

- Plaintiff maintains that she complained to Anne Boyle of Human Resources, Christine Park (her direct supervisor) and Patrick Crowe (Park's supervisor) in 2008 and early 2009 about pay inequity between the genders.  FAC ¶¶ 21-22.

- Plaintiff alleges that Christine Park gave her an unduly negative written performance review at the end of 2009.  FAC ¶ 24.

- Plaintiff alleges that her ability to do business encountered interference.  Plaintiff asserts that whereas she had never in ten years gotten an account from another portfolio officer, she was told to give her accounts to female team member Robyn Choe.  Plaintiff claims that Christine Park discouraged top BNY Mellon salespeople from bringing business to her and that Doris Meister (Crowe's supervisor) interfered with Plaintiff's opportunity to obtain a high-profile client account.  FAC ¶¶ 26, 28.

- Plaintiff's employment was terminated in September 2010, along with two other women on Christine Park's team.  Two men and a woman on Park's team were retained, as was Crocker, who was on a different team.  FAC ¶¶ 29-30.

## ARGUMENT

Plaintiff's summary judgment papers contain multiple references to an assortment of

alleged happenings which she asserts prove an atmosphere of "sexism" – but which actually have

nothing to do with the specific allegations of discrimination at issue here.  Plaintiff's Summary Judgment Brief at 7-8.  Specifically, Plaintiff points to one Human Resources presentation from 2005, a number of harassment claims made by other women against one salesperson, and one alleged male-only work event, to somehow prove that her supervisors treated her differently because she is a woman.  That "evidence" does no such thing.  The documents she references may have been responsive to Plaintiff's discovery requests, and the testimony she references may have answered questions asked at deposition, but this information is *completely irrelevant* to Plaintiff's actual claims and should be excluded from trial.

Indeed, these references are red herrings, provided to paint a false picture of a sexist work environment in which higher-ups turned a blind eye and deaf ear to the inappropriate treatment of women, while in reality they are taken out of context, pertain to individuals with whom Plaintiff had no issues, or are based on mere rumors.  These references also relate in large part to things that happened before the merger in 2007, under different management at a different company.  Ultimately, these sound bites do not touch upon the intent or motives of any of the individuals Plaintiff claims discriminated against her, and they therefore should not be admitted into evidence.

### A.    The Legal Standard

#### 1.    The information at issue lacks relevance, and the prejudice from admitting this information into evidence is real and substantial.

Only relevant evidence is admissible at trial.  Fed. R. Evid. 402.  Evidence is relevant if it has "any tendency to make the existence of any fact *that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08-Civ-7508, 2013 WL 1155420, at *2 (S.D.N.Y. Mar. 20, 2013) (*quoting* Fed. R. Evid. 401) (emphasis added).  Further, even when

evidence is relevant, it still may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury, among other things. *International Business Machines Corp. v. BGC Partners, Inc.*, No. 10-Civ.-128, 2013 WL 1775437, at *7 (S.D.N.Y. Apr. 25, 2013) (*quoting* Fed. R. Evid. 403).

Pursuant to Fed. R. Evid. 402, Plaintiff should be precluded from presenting evidence regarding these documents and events, as they have no relationship to the decision-making processes that actually affected her employment, and are therefore not probative of gender animus. Indeed, they pertain to a period of time prior to the 2007 merger – under a different management team and a different company altogether (with the sole exception of complaints by other women against a salesman with whom Plaintiff had a good business relationship). Evidence of these alleged events should also be excluded because the probative value of this evidence, if any, is substantially outweighed by the danger of unfair prejudice to Defendant and confusion to the jury, as discussed below. *See* Fed. R. Evid. 403.[2]

In some instances, circumstantial evidence may be relevant to a discrimination claim where it shows an employer's intent. *See Lomotey v. Connecticut-Dept. of Transp.*, No. 09-0466, 2009 WL 4430893, at *1 (2d Cir. Dec. 4, 2009). That said, the court must "distinguish

---

[2] Furthermore, Plaintiff would be attempting to confuse the jury by presenting evidence of a hostile work environment. Introduction of this kind of evidence would be improper because Plaintiff alleges disparate treatment, and *not* a hostile work environment claim. In addition, even if the Plaintiff were pursuing a hostile work environment claim, occasional incidents of alleged harassment have little or no probative value. *See Alfano v. Costello, et al.*, 294 F.3d 365, 374 (2d Cir. 2002) ("incidents must be more than episodic; they must be sufficiently continuous and concerted"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) ("[I]solated remarks or occasional episodes of harassment will not merit relief . . . in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive"); *Ogbo v. N.Y.S. Dept. of Fin.*, No. 99-cv-9387, 2001 WL 986546, at *7 (S.D.N.Y. Aug. 28, 2001) (finding five race-based comments over two years insufficient to show hostile work environment).

between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Id.* (*quoting Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005)).  In this case, the information Plaintiff will seek to admit into evidence fails to demonstrate the intent of the relevant individuals because it has nothing to do with any of them and, significantly, it largely pertains to the Plaintiff's *prior* workplace and *prior* management – before the 2007 merger.  Such evidence – random acts and documents from which Plaintiff and the relevant decision-makers were completely detached – falls into the category of "evidence that gives rise to mere speculation and conjecture," and it must be excluded.  It must be emphasized that this is not a case in which there is continuity of management and of the relevant decision-makers.  Here, the changes following The Bank of New York merger with Mellon Financial Corporation eliminate any conceivable relevance to this case.

> **2.  Character evidence to prove conformity with prior bad acts is not admissible.**

To the extent that Plaintiff offers this evidence to prove that Defendant acted in conformity with previously alleged incidents of wrongdoing or alleged previous demonstrations of insensitivity regarding gender, this evidence should be excluded in accordance with Fed. R. Civ. P. 404(b).  That Rule permits the introduction of such evidence where it is used to show motive or intent (among other things), but the exceptions to that Rule do not apply here because none of the decision-makers involved in the alleged discrimination against Plaintiff in the post-merger organization played any role in the earlier random documents, statements, and events she relies on to illustrate her claim that "sexism pervaded defendant's office."  Plaintiff's Summary

Judgment Brief at 7.  Thus, this evidence cannot illustrate the motive or intent of the relevant individuals, and should be excluded.

**B.     Specific Alleged "Bad Acts"**

Below are some specific examples of the irrelevant, and highly prejudicial, "facts" Plaintiff will likely seek to provide to the jury, all of which should be excluded from evidence. Furthermore, to the extent that Plaintiff seeks to admit other similar evidence to the jury, she should be prohibited from doing so on the grounds discussed below.

**1.     Defendant's generic Human Resources training from 2005 should not be admitted into evidence.**

Plaintiff asserts that a 2005 presentation by Human Resources, entitled "Human Resources Overview," demonstrates that "[s]exism pervaded defendant's office," and will likely attempt to present it to the jury as evidence of such alleged sexism.  *See* Plaintiff's Brief at 7. Specifically, Plaintiff points to one line in the presentation, which says "Women are no longer subordinate to men.  Men and women are now treated as peers."  *Id  See also* Exhibit A.[3]  This one line is taken completely out of context and turned on its head.

Human Resources training on discrimination and harassment in the workplace is common and encouraged so that employees understand the repercussions of what they might otherwise perceive to be innocent behavior and are better able to comply with expectations in the workplace.  These Human Resources training materials provide an overview of the law from a Human Resources perspective.  The one line Plaintiff highlights comes after a slide comparing historical views of business etiquette and social etiquette.  The full slide expresses in no

---

[3] All exhibits cited herein are attached to the Declaration Of Lloyd S. Clareman, Esq. In Support Of Defendant's Motion In Limine To Exclude Evidence Of, And Any Reference To, Allegations Of "Pervasive Sexism."

uncertain terms that in the realm of both business and social etiquette today, individuals must be treated equally regardless of age, gender or disability.  The slide in no way reflects that this is a divergence by the Defendant from prior policy or practice, as Plaintiff would like to portray.  The slides compare historical social and workplace stereotypes to explain what is wrong with them, and gives guidance on how to behave in an appropriate manner at work.

The presentation is quite comprehensive, identifying inappropriate behaviors (including harassment) and explaining that discrimination on the basis of race, national origin, color, religion, age or disability is strictly prohibited.  The presentation acknowledges the realities of the workplace, identifying specific behaviors that are unacceptable and explaining the consequences of such behaviors.  Without any basis, Plaintiff has tried to twist this presentation into evidence of sexism, admonishing the Defendant for exploring in depth common historical stereotypes and debunking them.  Indeed, Plaintiff wants to turn the legitimate, constructive use of the material in this presentation upside down to create a false negative inference against Defendant.

At the hearing on summary judgment, Plaintiff's counsel explained, "I just want to point out I find it ironic and a little strange that in 2005 this would have to be pointed out to any work staff in any company.  But here it is in black and white in a PowerPoint slide done by VP of HR."  4/12/2013 Summary Judgment Hearing Transcript at 14:14-17.  That argument seeks to turn night into day.  These presentations are typical and commonplace, and it is plainly appropriate to state the obvious in an ongoing effort to ensure that every employee is aware of the legal implications of historically-held social stereotypes.

For purposes of this motion, the critical point is that this presentation was made in 2005 to a different company, two years before the merger, with different people in management

positions, and prior to the time when the Plaintiff's discrimination claims arose.  It is wholly irrelevant.  Furthermore, because Plaintiff has no basis for her inference of sexism extracted from this presentation, and because such an inference is highly prejudicial to the Defendant, it should be excluded from evidence at trial.

        **2.**       **Evidence of allegations of sexual harassment by another employee against other women should be excluded.**

In her summary judgment brief, Plaintiff alleges that one of Defendant's top salespeople "has a long history of sexual harassment complaints that began in at least 2004 and that continues to present day." Plaintiff's Brief at 8.  According to Plaintiff, this is "another" example that "[s]exism pervaded defendant's office."

This "evidence" is irrelevant for multiple reasons.  This individual worked in sales, not in portfolio management, where Plaintiff worked.  He specialized in originating so-called "pay channel" clients, and Plaintiff herself acknowledged in her written response to her 2009 review that she shared "strong bonds" with the pay channel salesmen and expressed that they had been strong providers of new business to her. *See* Exhibit B.  She acknowledged that pay channel clients comprised 70% of her book of business, and the record is devoid of any negative interactions between Plaintiff and this particular salesman (to the contrary, there are multiple indications that they enjoyed a positive and professional business relationship).  Regardless of what other individuals may or may not have said about him, there is no evidence that Plaintiff had similar experiences or ever complained about him.  Indeed, Plaintiff does not allege that she was ever sexually harassed while employed by Defendant.

Allegations of sexual harassment made by other women in another business area against a salesperson with whom Plaintiff had a positive relationship have no relevance to Plaintiff's

claims of disparate treatment by *other individuals*.  The record confirms that any issues about this salesperson were raised to Human Resources, and that he received a final written warning because of his alleged behavior.  There is no evidence in the record that Plaintiff had any connection to the investigation regarding this individual – *or that she ever had the slightest problem with this individual when she was employed by the Defendant.*  As already noted, there is considerable evidence that Plaintiff's relationship with this individual was professional and positive.

In *Leibowitz v. New York City Transit Auth*, the Second Circuit found that a plaintiff's awareness of alleged harassment of other women by another employee, all of which occurred outside her presence, was insufficient to establish the plaintiff's own claim.  252 F.3d 179, 183 (2d Cir. 2001).  The Second Circuit stressed that the second-hand allegations that plaintiff claimed had affected her own work environment were from co-workers working

> in another part of the employer's premises, out of [the plaintiff's] sight and regular orbit; they were doing another job, and were allegedly subjected to harassment by another supervisor who supervised them but did not supervise [the plaintiff]; the experiences of those women came to [the plaintiff's] notice via hearsay (and were not proved)…. In terms of the objective impact of the harassment alleged, that harassment might as well have been going on in a nearby office of another firm, or been the subject of an infuriating newspaper article, or been a false rumor of a kind that would be upsetting if true.

*Id.* at 189.  The court also found that the plaintiff's claim regarding the insufficiency of her employer's investigation of the alleged harassment did not affect the plaintiff's own working environment or the terms of conditions of her employment, and she could not sustain a claim against her employer.  *Id.*  Likewise, evidence of harassment claims made against a salesperson on another team by other women, and the resulting investigation by Defendant, have no probative value here where the record indicates Plaintiff was removed from these events

altogether.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110-111 (2d Cir. 1997) (incidents

relating to co-workers and relayed by others "may be of limited probative value").

Moreover, this "evidence" implicates Fed. R. Evid. 403, because any probative value it

might have is substantially outweighed by the possibility of jury prejudice and confusion.

Introducing evidence of harassment complaints pertaining to another employee, made by

individuals who are not involved in this lawsuit, would essentially create a trial within a trial, as

the jury would first have to weigh the credibility and evaluate the level of seriousness of the

allegations of sexual harassment waged against this individual to determine if they reflect on

anyone other than the salesman himself, or even if they reflect on him in any significant way.

This "mini trial" would clearly cause delay and confusion, because the salesman is not on trial

and he is not even accused of harassing the Plaintiff.  And if the jury believes that Defendant

engaged in harassment with respect to other employees, the jury may improperly conclude that

the Plaintiff was also subjected to discrimination without any direct or circumstantial proof of

her claims.  The probative value of references to discrimination or harassment allegedly

experienced by other employees would be far outweighed by the potential prejudice caused by

the evidence.  For that reason, this evidence should be excluded.

Indeed, courts have broad discretion to exclude such evidence based upon its analysis of

the facts and circumstances of the case.  As the Supreme Court observed in a decision involving

an ADEA discrimination case:

> The question whether evidence of discrimination by other supervisors is relevant
> in an individual … case is fact based and depends on many factors, including how
> closely related the evidence is to the plaintiff's circumstances and theory of the
> case.  Applying Rule 403 to determine if evidence is prejudicial also requires a
> fact-intensive, context-specific inquiry. … Rules 401 and 403 do not make such
> evidence *per se* admissible or *per se* inadmissible, and…the inquiry required by
> those Rules is within the province of the District Court.

10

*Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S. Ct. 1140, 1143, 1146-47 (2008).

In the Second Circuit, courts have required plaintiffs to show that the circumstances involving the complaints and/or allegations of other employees are reasonably tied to the discriminatory decision affecting the plaintiff. *See Martin v. Reno*, No. 96 Civ. 7646 (NRB), 2000 U.S. Dist. LEXIS 18278, at *10 (S.D.N.Y. Dec. 18, 2000); *Fowler v. Transit Supervisors Org.*, No. 96 Civ. 6796 (JGK), 2000 U.S. Dist. LEXIS 17452, at *54 (S.D.N.Y. Nov. 1, 2000); *Rivera v. Baccarat, Inc.*, No. 95 Civ. 9478 (MBM) (JCF), 1997 U.S. Dist. LEXIS 19911, at *5-7 (S.D.N.Y. Dec. 12, 1997).

Specifically, to establish the requisite nexus between other employees' complaints and/or allegations and those of the plaintiff, a plaintiff must show that the same decision-makers and the same type of discrimination (*e.g.*, gender discrimination) were involved in both cases. *See Fowler*, 2000 U.S. Dist. LEXIS 17452, at *52 (excluding evidence of other complaints of discrimination on the grounds that they involved different supervisors and different claims of discrimination); *Rivera*, 1997 U.S. Dist. LEXIS 19911, at *5-7 (same). *See also Kelber v. Joint Indus. Bd. of the Elec. Indus.*, 27 F.3d 42, 47 (2d Cir. 1994) (allegations of pregnancy discrimination by two female employees were deemed irrelevant to plaintiff's claims of pregnancy discrimination); *Martin*, 2000 U.S. Dist. LEXIS 18278, at *10 (excluding evidence of discriminatory treatment of others in case where plaintiff alleged hostile work environment, constructive discharge and retaliation, reasoning that testimony about alleged incidents of discrimination that do not involve plaintiff "is entirely irrelevant to [plaintiff's] claims, and would merely protract the trial by taking the testimony too far afield from [plaintiff's] actual claims").

11

In the absence of evidence demonstrating such a connection between the plaintiff's allegations and the other employees' complaints and/or allegations, courts have held that such evidence is irrelevant and inadmissible at trial. *See Rivera*, 1997 U.S. Dist. LEXIS 19991, at *5-7. Accordingly, in a case that does not even have a hostile work environment claim, in which Plaintiff is complaining that she was underpaid and then fired (as part of a RIF) not by the person who exhibited allegedly sexist behavior, but by her own supervisors who were not the supervisors of the salesman in question (salesmen were not part of the "team" structure and reported to different individuals than those to whom the portfolio officers reported), Plaintiff should be precluded from introducing any evidence of claims separate and apart from her allegations concerning conduct allegedly directed at her. Thus, the Court should not permit this evidence since such evidence would not be probative of whether the Plaintiff was the victim of discrimination.

Furthermore, Plaintiff has indicated that she plans to call Tom Galante, an employee of Defendant in the employee relations department, as a witness in this trial. Mr. Galante was involved in the investigation into allegations against this salesman in 2012. *See* Exhibit C. For all the reasons listed herein, Plaintiff should be precluded from calling Mr. Galante as a witness, as his testimony is completely irrelevant to Plaintiff's claims in this case and will only confuse the jury.

### 3. Allegations of strippers at a work-sponsored event are rife with hearsay, irrelevant and highly prejudicial.

In her summary judgment brief, Plaintiff asserts that she "complained of defendant's sexist attitudes in 2005…after a men-only event defendant's sales staff hosted during the 2004 U.S. Open that purportedly involved strippers." Plaintiff's Brief at 7. The only evidence in the

record that any such event took place came from Plaintiff herself – in a complaint she made to

Human Resources in May 2005 about expense-related issues involving sales supervisors Jeff

Cadan and Mike Paesano.  In that complaint, her allegation was that "Cadan and Paesano

entertain clients at strip clubs."  There are no admissible facts in the record that support this

allegation, nor any proof that Plaintiff was impacted by this behavior, if it occurred.

Beyond Plaintiff's repetition of a rumor regarding strippers at a business-related event,

the closest the record gets to any proof of what occurred is from others who heard the rumor but

have no knowledge as to whether it is true.  Rita Singer, one of Plaintiff's former colleagues,

testified that "there were rumors" and "there were hints" that there were strippers or exotic

dancers present at a party held in the Hamptons for the U.S. Open golf tournament, hosted by the

Mellon sales force for clients. Singer Dep. at 131-133.  But Ms. Singer had no knowledge and

could not recall the source of the rumors.  *Id.*  Russell Crocker, the only deponent who actually

attended the event, said he saw a female salesperson at this allegedly men-only event the day he

was there, and saw no strippers.  Crocker Dep. at 125-126.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted." Fed. R. Evid. 801(c).  *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529,

562 (E.D.N.Y. 2011) (citing Fed. R. Evid. 801(c)).  Hearsay is inadmissible unless it falls within

a recognized exception to the hearsay rule.  *Hawkins v. Costello*, 460 F.3d 238, 245 (2d Cir.

2006).  As the proponent of hearsay testimony, it is Plaintiff's burden to establish that an

exception to the hearsay rule applies.  *Evans v. Port Authority of New York and New Jersey,* 192

F. Supp. 2d 247, 263 (S.D.N.Y. 2002).

Plaintiff points to these alleged "facts" in an effort to create the illusion of pervasive sexism permitted by the Defendant, yet the only "evidence" comes in the form of anonymous "rumors."  Plaintiff's Brief at 7.  Such rumors are inadmissible hearsay, to which no exception to the hearsay rules is applicable.  Indeed, Plaintiff has not identified anyone with personal knowledge to support her assertions, and has not identified the individual(s) who started these rumors.

Furthermore, even if this event took place, it has nothing to do with Plaintiff's allegations.  If the event occurred, it took place prior to the merger in 2007, and was therefore hosted by a different company with different management.  It bears no significance to Plaintiff's pay, the job she held, or the termination of her employment.  It bears no significance to the actions of any of her supervisors at the relevant time; indeed, the individuals she identified as the supposed ringleaders of this event were Jeff Caden and Michael Paesano, neither of whom Plaintiff has ever identified as having discriminated against her or as having being involved in any decisions she alleges were discriminatory.  The non-existent, or, at most, scant probative value of this one rumored episode is vastly outweighed by its prejudicial impact, and should therefore be excluded.

## **CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court grant its motion.

Respectfully submitted,

THE BANK OF NEW YORK MELLON CORPORATION

By its attorney,

14

Dated:  June 10, 2013

*/s/ Lloyd Clareman*

_____

Lloyd S. Clareman
121 East 61st Street, 2nd Floor
New York, NY 10065
Tel. No. (212) 751-1585
Lloyd.Clareman@clareman.com

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 10, 2013, a true copy of the foregoing was filed through the

Court's electronic filing system (ECF) and was served upon all attorneys of record for each other

party to this action through operation of such system.  It is available for viewing and

downloading through the ECF system.


*/s/ Lloyd Clareman*
Lloyd Clareman

16